# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 97836

---

## BETSY KERN

PLAINTIFF-APPELLANT

vs.

## ANTHONY BUEHRER, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-741851

**BEFORE:** Stewart, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   September 6, 2012

[Cite as *Kern v. Buehrer*, 2012-Ohio-4057.]

**ATTORNEY FOR APPELLANT**

Daniel S. White
34 Parmelee Drive
Hudson, OH    44236

**ATTORNEY FOR APPELLEES**

David Ledman
35000 Chardon Road, Suite 105
Willoughby Hills, OH    44094

MELODY J. STEWART, P.J.:

{¶1} Plaintiff-appellant Betsy Kern brought this fraud action against defendants-appellees Anthony and Michelle Buehrer ("the Buehrers") primarily alleging that they induced her to purchase their house by failing to disclose or affirmatively denying the existence of water leakage in the finished basement of the house. The Buehrers denied knowledge of any water leakage and sought summary judgment on grounds that Kern purchased the house "as is," despite obtaining a presale home inspection that alerted her to certain defects that could lead to water damage. The court found that the home inspection report placed Kern on notice of possible defects with the house, so she had knowledge of any defective conditions prior to completing the sale and could not establish a triable issue of fact on her fraud claim.

{¶2} Cases involving house sales with subsequent discovery of water leakage raise several issues. As a general principle, Ohio adheres to the doctrine of caveat emptor, which precludes a purchaser from recovering for a structural defect in real estate if: "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud

on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988), syllabus.

{¶3} Caveat emptor does not apply, however, when the decision to purchase has been induced by fraudulent misrepresentations. To prove fraud, a plaintiff must show:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶4} Read together, these cases hold that there is no duty to warn of or disclose "patent" defects; that is, defects that are readily observable. However, when defects are "latent" or not readily observable or discoverable through a purchaser's reasonable inspection, the seller has a duty to disclose the defect if material to the sale. *Layman* at 178. In other words, a seller has no duty to disclose that which a buyer can see or discover through reasonable inspection; however, if the seller is aware of defects that may be hidden from a buyer's reasonable inspection, there is a duty to disclose.

{¶5} Ohio also enforces "as is" clauses in home purchase agreements. In contract law, an "as is" clause essentially disclaims any warranties made

by the seller. As applied to home purchases, the agreement to purchase "as is" means that a buyer agrees to make her or his own appraisal of the bargain and to accept the risk that she or he may be wrong. *Tipton v. Nuzum*, 84 Ohio App.3d 33, 39, 616 N.E.2d 265 (9th Dist.1992). An "as is" clause in a home purchase agreement will not, however, prevent recovery on a seller's fraudulent misrepresentation or information concealment. *Brewer v. Brothers*, 82 Ohio App.3d 148, 151, 611 N.E.2d 492 (12th Dist.1992).

{¶6} Civ.R. 56(C) permits the court to grant summary judgment when, after viewing the facts most favorably to the nonmoving party, reasonable minds could find that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.

{¶7} Kern alleged that she found water in the basement within two days of moving into the house. She claimed that "with every rain or snow, there was water pooling and flooding" in the basement, rendering the space unusable. The foreman of a waterproofing contractor she hired to repair the house offered an affidavit on her behalf in which he said he found:

   a.  Stains on the wall and floor from water running to drain;

   b.  Dry-rotted drywall that was still damp;

   c.  Cement steps in front right corner had gaps to allow water;

   d.  Moisture under the floor; and

e.   Existing footer tile failure.

**{¶8}** Prior to selling the house to Kern, the Buehrers signed a residential property disclosure form in which they denied having knowledge of "water intrusion" in the house.   In an affidavit submitted in support of the motion for summary judgment, Anthony Buehrer stated that apart from performing "some maintenance work" in the basement, including cleaning and painting, and extending down spouts further from the house, "we experienced no significant water leakage, water accumulation, excess moisture or other water instrusions" in the basement.

**{¶9}** The Buehrers also offered evidence of a home inspection report commissioned by Kern that found "[t]he downspouts are draining into the yard which may indicate the drain tiles are broken."   Kern's home inspector also reported:

> The basement is partially dry at the time of the inspection.
> Because the basement is below grade, there exists a vulnerability
> to moisture penetration after heavy rains.   There were no major
> visual defects observed in the basement.   There was a high level
> of moisture observed on the exterior walls.

**{¶10}** It is true that the home inspector's report uncovered several items that might have led the reasonably prudent home buyer to suspect that

the basement of the house suffered from, or was susceptible to, water leakage. But the home inspector couched his findings in somewhat ambiguous language: the characterization of the basement walls as "partially dry" and the statement that the grading of the soil created "vulnerability" to leakage were not definitive statements that the basement was subject to ongoing water intrusion.

{¶11} Despite these warnings from her home inspector, Kern said that she relied on the Buehrers' representation in the real estate disclosure form that they had no knowledge of water intrusion in the basement. She said that just two days after moving into the house, she discovered water "pooling and flooding in the basement[.]" She then spoke with Anthony Buehrer to ask whether he had experienced any issues with water in the basement and he told her "there had been a few instances of water near a drain" in an unfinished portion of the basement. Kern's recollection of Anthony's statement was corroborated by Anthony's affidavit that said that "we experienced no significant water leakage, water accumulation, excess moisture or other water intrusion problems with the Property * * *." Anthony's use of the word "significant" implies that there was some water intrusion in the basement, the amount of which depended on what Anthony subjectively considered to be "significant."

{¶12} Anthony's statement that the basement experienced water intrusion directly conflicted with the Buehrers' representation in the disclosure form that they had no knowledge of any past or current water leakage in the basement. We are aware that a purchaser, once alerted to a possible defect, "may not simply sit back and then raise his lack of expertise when a problem arises." *Duman v. Campbell*, 8th Dist. No. 79858, 2002-Ohio-2253, ¶ 22. However, sellers may not misrepresent the condition of a house and expect to be insulated from liability by pointing to the results of a home inspection with ambiguous findings on water intrusion. Comment (a) to 3 Restatement of the Law 2d, Torts, Section 547, states:

> It is not enough to relieve the maker of a fraudulent misrepresentation from liability that the person to whom it is made makes an investigation of its truth. It is only when he relies upon his investigation and does not rely upon the false statement that he cannot recover. Whether he does rely upon the one or the other or in substantial part upon both * * * is a question of fact and is for the jury to determine, unless the evidence clearly indicates only one conclusion.

> Ordinarily one who makes an investigation will be taken to rely upon it alone as to all facts disclosed to him and all facts that must have been obvious to him in the course of it. Thus one who has fully inspected a house before buying it ordinarily cannot claim that he was deceived by a misrepresentation of the condition of the ceilings that was apparent to any one taking the

trouble to look at them. On the other hand, if the condition is a latent one, which the inspection or investigation could not reasonably be expected to discover, the recipient may still be relying upon the representation as well as the investigation * * *. *Particularly when the investigation produces results that tend to confirm the representation but are still somewhat inconclusive, it may be found that the recipient has relied upon both the investigation and the representation and that the latter has played a substantial part in inducing him to take action.* (Emphasis added.)

{¶13} There was no obvious evidence of water intrusion in the basement. In fact, at the time of sale the Buehrers used the basement as a living space complete with carpet and furniture. This use reasonably suggested that the basement did not suffer from water intrusion despite warnings from the home inspector. And the home inspector's report made findings that were couched in ambiguous or vague language such as walls were "partially dry" and that the outside grading of the soil created "vulnerability" to leakage.

{¶14} For purposes of summary judgment, there was sufficient evidence from which reasonable minds could differ on whether the Buehrers

misrepresented or failed to disclose the extent of water intrusion in the basement, and whether Kern justifiably relied on those statements. Despite there being some warning signs of water intrusion, those warnings were sufficiently ambiguous that, when viewed along with the Buehrers' firm representation that no water intrusion existed and evidence that the basement had been used as a living space, reasonable minds could differ on whether Kern reasonably relied on the representation in the disclosure form. As the non-moving party for summary judgment, Kern was entitled to have the evidence viewed most favorably to show that she relied in substantial part on the Buehrers' representation that the basement experienced no water instrusions of any kind. It remains for the trier of fact to determine whether this reliance was reasonable under the circumstances.

{¶15} We therefore find that the court erred by granting summary judgment on the fraud counts. Our holding moots Kern's second assignment of error on her claim for rescission on a mutual mistake of fact.

{¶16} This cause is reversed and remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellees her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common

Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR